## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**KENDRA ARISTA AND RACHEL BORIS**

**Plaintiffs**

v.

**UNITED STATES OF AMERICA**

**Defendant.**

**Civil Action No.**

**JUDGE CATHY BISSOON**

## COMPLAINT

Plaintiffs, Kendra Arista and Rachel Boris, file this complaint against Defendant, United States of America, and allege as follows:

### JURISDICTION AND VENUE

1.      This case, sounding in medical malpractice, involves claims for personal injury brought against the United States of America under Section (b)(1) of the Federal Tort Claims Act (FTCA), 42 U.S.C. § 1346.  Jurisdiction is based on 28 U.S.C. § 1331 (federal question), 42 U.S.C. § 1346, et seq. (FTCA litigation), and 28 U.S.C. § 1367 (supplemental jurisdiction).

2.      Venue is proper because the acts and omissions that form the subject matter of this action occurred in this judicial district.

3.      On or about June 23, 2016, suit in this matter was filed in the Allegheny County Court of Common Pleas (Arista, et al. v. Sucato, et al., No. GD-16-11267), following which, on or about September 9, 2016, the action was removed to the United States District Court for the Western District of Pennsylvania (Docket No. 16-1401).

4.      On October 4, 2016, this Honorable Court entered an Order dismissing

Defendants, Esther M. Ngare, M.D., Amy G. Nevin, M.D., Trina Peduzzi, M.D., and Hilltop Community Healthcare Center, from this action, *with prejudice*, and substituting the United States of America as the proper Defendant with respect to Plaintiffs' claims for all further proceedings in this case. A copy of this Court's October 4, 2016 Order is attached hereto as *Exhibit "A."*

5. On October 18, 2016, this Honorable Court entered an Order dismissing Plaintiffs' Complaint against the United States of America, *without prejudice*, staying the action against the remaining defendants, Gina Sucato, M.D., Children's Hospital of Pittsburgh of UPMC, University of Pittsburgh Physicians, and UPMC Health System, from Civil Action No. 16-1401, and granting Plaintiffs the right to re-file an action against the United States of America after Plaintiffs' administrative remedies had been exhausted. A copy of this Court's October 18, 2016 Order is attached hereto as *Exhibit "B."*

6. On or about October 20, 2016, Plaintiffs placed the United States Department of Health and Human Services, 330 Independence Avenue, S.W., Switzer Building, Room 2600, Washington, D.C. 20201, on "notice of claim for damage, injury, or death" via Standard Form 95. A copy of Plaintiffs' correspondence with completed Standard Form 95 is attached hereto as *Exhibit "C."*

7. On or about January 30, 2017, the United States Department of Health and Human Services provided a notice of final determination of Plaintiffs' administrative claim to Plaintiffs' counsel. In this letter, Plaintiffs' claim was expressly denied. A copy of this correspondence is attached hereto as *Exhibit "D."* In light of this administrative claim's denial, Plaintiffs are now permitted to file these claims.

8. Plaintiffs incorporate by reference, <u>Arista, et al. v. Sucato, et al.</u>, No. 16-1401,

2

attached hereto as *Exhibit "E,"* as though fully set forth herein.[1]

## THE PARTIES

9.      Plaintiff, Kendra Arista [also referred to as "Kendra"] was born on August 2, 1994 and is a citizen and resident of the Commonwealth of Pennsylvania, residing therein at 291Greenlee Road, Pittsburgh, Pennsylvania 15227.

10.     Plaintiff, Rachel Boris, Kendra Arista's mother, is a citizen and resident of the Commonwealth of Pennsylvania, residing therein at 291Greenlee Road, Pittsburgh, Pennsylvania 15227.

11.     Defendant, United States of America d/b/a Hilltop Community Healthcare Center [hereinafter "HCHC"], is a state-chartered health care facility.   HCHC is a Health Center Program grantee under 42 U.S.C. 254b and a deemed Public Health Service Employee under 42 U.S.C. 233(g)-(n).   HCHC is a state agency within the meaning of 28 U.S.C. § 2674.   HCHC maintains its principal place of business at 151 Ruth Street, Pittsburgh, Pennsylvania 15221. HCHC includes Esther M. Ngare, M.D. ["Dr. Ngare"], Amy G. Nevin, M.D. ["Dr. Nevin"], and Trina Peduzzi, M.D. ["Dr. Peduzzi"], as well as other employees, actual agents, apparent agents, ostensible agents, and servants.   As more fully set forth herein, the claim asserted against this Defendant is for the professional negligence of its employees, actual agents, apparent agents, ostensible agents, and/or servants, including Dr. Ngare, Dr. Nevin, and Dr. Peduzzi.

12.     At all times relevant hereto, Dr. Ngare, Dr. Nevin, and Dr. Peduzzi, as well as other employees, actual agents, apparent agents, ostensible agents, and servants of HCHC, acted in the capacity of Kendra Arista's treating physicians or medical providers and were the actual, apparent or ostensible agents, servants, and/or employees of Defendant, United States of

---

[1] Plaintiffs intend to move this Honorable Court to consolidate Arista, et al. v. Sucato, et al., No. 16-1401 with this action.

America.  Dr. Ngare's, Dr. Nevin's, and Dr. Peduzzi's medical care and treatment of Kendra Arista were within the scope of their agency, master-servant and/or employment relationship with Defendant, United States of America.  A Certificate of Merit as to Defendant, United States of America, is attached hereto as *Exhibit "F."*

13.     The injuries of Kendra Arista were caused solely and exclusively by the negligence of Defendants and were due in no manner whatsoever to any act or failure to act on Plaintiffs' part.

## OPERATIVE FACTS

14.     Plaintiff, Kendra Arista, was born on August 2, 1994.

15.     Plaintiff, Rachel Boris, is Kendra Arista's mother and until Kendra reached majority on August 2, 2012, was her natural guardian.

16.     On June 30, 2011, at age 16, Kendra presented to Dr. Nevin at HCHC and complained of a three year history of secondary amenorrhea.

17.     On June 30, 2011, in response to Kendra's complaint of secondary amenorrhea, Dr. Nevin prescribed Provera 10mg to be taken for 10 days and advised Kendra and her mother that if Kendra did not have a withdrawal bleed following completion of the Provera, she would need to follow up at Magee Women's Hospital for further evaluation.

18.     On June 30, 2011, Dr. Nevin did not perform a breast exam on Kendra and failed to determine whether Kendra had galactorrhea.

19.     On July 12, 2011, after Kendra failed to have a withdrawal bleed following completion of the Provera, a nurse at HCHC directed Kendra's mother to have Kendra seen at the Children's Hospital of Pittsburgh ("CHP") Adolescent Medicine Clinic.

20.     On September 27, 2011, at age 17, Kendra was evaluated and examined at the

4

CHP Adolescent Medicine Clinic by Traci Kazmerski, M.D., a resident, and Dr. Sucato, an attending, for secondary amenorrhea.

21.     On September 27, 2011, neither Dr. Kazmerski nor Dr. Sucato performed a breast exam on Kendra and neither physician determined whether Kendra had galactorrhea.

22.     On September 27, 2011, Dr. Sucato had Kendra undergo lab work that was drawn that day to rule out hypothalamic dysfunction, pituitary dysfunction, or thyroid disease as the cause of Kendra's secondary amenorrhea.

23.     On September 27, 2011, Kendra's lab work at CHP revealed an elevated prolactin of 64.9ng/ml, representing hyperprolactinemia, a well-known cause of secondary amenorrhea related to pituitary dysfunction.

24.     On September 27, 2011, Kendra's lab work at CHP also revealed an elevated Sed Rate [ESR] of 48.

25.     On October 11, 2011, Dr. Peduzzi, Dr. Nevin's associate at HCHC, documented receipt of Dr. Sucato's office note from the CHP Adolescent Medicine Clinic.

26.     On October 28, 2011, Dr. Nevin reviewed Kendra's HCHC office chart.

27.     On November 15, 2011, Kendra was seen by Dr. Peduzzi at HCHC and Dr. Peduzzi documented that Kendra's prolactin was high, for which Dr. Peduzzi noted Kendra needed follow up at the CHP Adolescent Medicine Clinic "as soon as possible."

28.     On December 22, 2011, Kendra presented to HCHC and Dr. Nevin ordered labs that Kendra had drawn that day, including a repeat prolactin.

29.     On December 27, 2011, Dr. Peduzzi documented that Kendra's repeat prolactin level on 12/22/11 was elevated at 55.9ng/ml and Kendra had and elevated ESR, for which Dr. Peduzzi called the CHP Adolescent Medicine Clinic and spoke to Jonathan Fletcher, M.D.

30.    On December 27, 2011, Dr. Fletcher advised Dr. Peduzzi that Kendra's elevated prolactin of 55.9 was "not immediately concerning for a pituitary adenoma, but it should be followed," and recommended Kendra be seen in the CHP Adolescent Medicine Clinic.

31.    On December 30, 2011, Dr. Peduzzi documented that Kendra had an appointment with Dr. Sucato at the CHP Adolescent Medicine Clinic on 2/8/12.

32.    On January 5, 2012, Dr. Sucato documented that she had received and reviewed Kendra's growth chart and suspected Kendra's secondary amenorrhea was due to weight loss.

33.    On February 8, 2012, Kendra was evaluated and examined by Dr. Sucato at the CHP Adolescent Medicine Clinic and Dr. Sucato documented that she suspected Kendra's secondary amenorrhea was due to weight fluctuations and would repeat Kendra's prior abnormal lab studies and "provided those [labs] are all normal, will monitor and follow up in 3 months."

34.    On February 8, 2012, Dr. Sucato did not perform a breast exam on Kendra and failed to determine whether Kendra had galactorrhea.

35.    On February 8, 2012, Kendra's lab studies ordered by Dr. Sucato included an elevated prolactin level of 59.2 ng/ml and elevated ESR of 34.

36.    On February 8, 2012, Dr. Sucato advised Kendra and her mother that Kendra's secondary amenorrhea and elevated prolactin were the result of weight loss and psychosomatic illness and were not of concern.

37.    On February 8, 2012, Dr. Sucato referred Kendra to Southwestern Human Services for counseling.

38.    On February 10, 2012, Dr. Sucato documented that Kendra's labs were "stable."

39.    On February 14, 2012, Dr. Nevin and Dr. Peduzzi reviewed Kendra's HCHC chart, including the CHP Adolescent Medicine Clinic report from Dr. Sucato dated 2/8/12.

40.     On February 27, 2012, Jodi Pantis, on behalf of the CHP Adolescent Medicine Clinic, spoke to Kendra's mother by phone and informed her that Kendra's labs were heading in the right direction and confirmed that Kendra had an appointment to be seen for counseling.

41.     On March 2, 2012, Kendra was evaluated by Dr. Peduzzi at HCHC for swelling of the eyelid, during which Dr. Peduzzi did not address or discuss Kendra's amenorrhea or elevated prolactin levels.

42.     On March 3, 2012, Kendra was seen for counseling at Southwestern Human Services.

43.     On September 4, 2013, with Kendra now 19 years of age, Dr. Ngare evaluated Kendra and performed a driver's license physical examination and documented that Kendra had a normal physical examination with normal vision and no contraindications to driving.

44.     On September 4, 2013, despite documenting that Kendra continued to complain of amenorrhea, Dr. Ngare did not evaluate or investigate Kendra's amenorrhea or history of elevated prolactin levels within the HCHC medical record.

45.     On September 4, 2013, Dr. Ngare did not perform a breast exam on Kendra and failed to determine whether Kendra had galactorrhea.

46.     On or about June 28, 2014, Kendra was a passenger in her mother's automobile in a parking lot when another car, while backing up, hit their car at a low rate of speed.

47.     On July 8-9, 2014, Kendra was seen in Jefferson Regional Medical Center's Emergency Department complaining of neck pain and severe numbness in her left upper extremity and stated that she may have hit her head in the recent car accident.

48.     On July 9, 2014, a CT of Kendra's head revealed a 1.9 x 1.8cm calcified mass in her sella consistent with a pituitary adenoma/tumor.

49.    On July 9, 2014, given the tumor on Kendra's head CT and history of amenorrhea, Richard Sullivan, M.D., the ED physician, ordered an outpatient brain MRI and referred Kendra to a neurosurgeon and endocrinologist.

50.    On September 25, 2014, unable to procure an appointment for Kendra with a neurosurgeon or endocrinologist because of a lack of insurance, Kendra's mother called HCHC and informed Dr. Peduzzi that Kendra was having severe headaches and was recently diagnosed with a possible pituitary tumor on CT, but because Kendra had no insurance she was unable to procure an appointment with doctors.

51.    On November 6, 2014, Kendra's mother called HCHC and informed a nurse that she had been unable to get insurance or social security disability for Kendra and wanted to speak to David Bytnar about insurance options for Kendra under the Affordable Care Act.

52.    On November 19, 2014, after obtaining insurance through Medicaid, Kendra was seen at HCHC by Lorraine Reiser, CRNP for follow up of her pituitary tumor.

53.    On November 19, 2014, Kendra advised CRNP Reiser that she had had secondary amenorrhea since the age of 13.

54.    On November 19, 2014, CRNP Reiser's diagnoses on Kendra included anxiety and depression, visual disturbances, chronic headaches, secondary amenorrhea, nipple discharge, and other anterior pituitary hyperfunction.

55.    On November 19, 2014, CRNP Reiser recommended that Kendra needed counseling for behavioral issues.

56.    On November 19, 2014, Kendra's prolactin was elevated at 40.4ng/ml.

57.    On December 15, 2014, Kendra was seen by Joanna Fong-Isariyawongse, M.D., a neurologist, for debilitating headaches and was noted to have a history of elevated prolactin with

amenorrhea and galactorrhea and pituitary mass on CT for which Dr. Fong-Isariyawongse ordered MRI of Kendra's pituitary.

58.     On January 23, 2015, Kendra underwent MRI of the pituitary at JRMC Diagnostic Services in Pittsburgh that revealed a 3.2 x 2.3 x 2.3cm pituitary mass elevating the optic chiasm.

59.     On February 17, 2015, Kendra was evaluated and examined by David Jho, M.D., Ph.D., a neurosurgeon, who documented that Kendra had a history of secondary amenorrhea since age 13, galactorrhea since age 14, history of elevated prolactin levels, chronic headaches with nausea for years, and visual problems primarily in her left eye.

60.     On February 17, 2015, Dr. Jho identified left-sided visual field deficits and diagnosed Kendra with a pituitary macroadenoma with suprasellar extension and compression of the optic chiasm.

61.     On February 20, 2015, Kendra was evaluated and examined by Ellen B. Mitchell, M.D., a Neuro-Ophthalmologist, who documented that Kendra had a history and findings compatible with long-standing chiasmal compression with bilateral asymmetric vision loss, left greater than right, for which the prognosis for recovery of vision in Kendra's left eye was guarded.

62.     On February 20, 2015, Kendra presented to Allegheny General Hospital's Emergency Department by ambulance with a severe headache, rated 10/10, radiating down her neck with a known history of brain tumor for which she was evaluated by Dr. Jho and treated with Fentanyl, a narcotic, and Decadron, a steroid.

63.     On February 20, 2015, Kendra underwent a CT of her head that showed a 2.5cm pituitary tumor with suprasellar extension and calcified rims consistent with a slow-growing, long-standing lesion without acute changes.

9

64.     On February 26, 2015, Dr. Jho evaluated Kendra in his office and diagnosed her with a slow-growing, non-functioning pituitary macroadenoma with supraseller extension compressing the optic chiasm and causing loss of vision with panhypopituitarism for which he scheduled her for transphenoidal surgical resection in hopes of preventing further vision loss. Dr. Jho further noted that the long-standing compression with associated panhypopituitarism was not expected to improve since it had been in process over several years.

65.     On February 26, 2015, Kendra was evaluated and examined by Ines Donangelo, M.D., an Endocrinologist, who diagnosed Kendra with central hypocortisolism, central hypothyroidism, central hypogonadism, and Growth Hormone deficiency.

66.     On March 11, 2015, Dr. Jho performed an endoscopic endonasal transphenoidal surgical resection of Kendra's pituitary tumor.

67.     Following the March 11, 2015 transphenoidal surgery by Dr. Jho, Kendra never regained vision in her left eye and is permanently blind in that eye.

68.     Following the March 11, 2015 surgery, Kendra began having grand mal seizures that occurred up to four times per day, resulting in significant physical disability and pain.

69.     Subsequent to the March 11, 2015 surgery, Kendra's galactorrhea and severe headaches resolved.

70.     On July 27-28, 2015, CT and MRI of Kendra's head and brain revealed a calcified rim around the sella caused by the prior tumor's chronic, long-standing status that was filling up with fluid.

71.     On January 7, 2016, MRI of Kendra's pituitary revealed a 3.4 x 2.4 x 2.1cm cystic suprasellar mass.

72.     On February 3, 2016, because the recurrent suprasellar cystic mass was

symptomatic and could put Kendra's optic chiasm at risk of compression and result in the loss of vision in her right eye, Dr. Jho performed transphenoidal surgery with drainage of Kendra's suprasellar mass.

73.     Currently, Dr. Jho is observing Kendra's sella for evidence of recurrent cyst formation for which radiation therapy would be indicated to try and prevent loss of vision in her right eye.

74.     Currently, Dr. Donangelo is treating Kendra with hydrocortisone, thyroid replacement and estrogen and plans to start Kendra on Growth Hormone.

75.     Currently, Kendra is being treated with Tegretol for grand mal seizures.

76.     As a direct and proximate cause of the defendant's negligence, as specified at length herein, Kendra Arista sustained the following injuries:

     a.     Panhypopituitarism;

     b.     Left eye blindness;

     c.     Increased risk of losing vision in right eye;

     d.     Loss of smell (anosmia);

     e.     Central hypothyroidism;

     f.     Vitamin D Deficiency;

     g.     Diabetes insipidus;

     h.     Severe headaches;

     i.     Seizure disorder;

     j.     Need for quad-cane assistance caused by seizures;

     k.     Recurrent suprasellar lesion;

     l.     Arrest of puberty;

m.    Arrest of growth;

n.    Need for lifelong treatment with multiple medications and related side effects, including but not limited to depression, mood swings, suicidal ideation, hirsutism, masculinizing features;

o.    Increased risk of additional brain/pituitary surgeries;

p.    Increased risk of the need for radiation therapy;

q.    Increased risk of medical complications caused by panhypopituitarism, including but not limited to osteoporis, obesity, elevated cholesterol, cardiovascular disease, metabolic syndrome, psychologic illness, estrogen deficiency, and infertility;

r.    Anxiety;

s.    Depression;

t.    Fear and fright;

u.    Panic attacks;

v.    Pain and suffering;

w.    Disfigurement and scarring;

x.    Loss of opportunity for cure;

y.    Past and future medical expenses;

z.    Past and future physical pain and suffering;

aa.    Past and future mental anguish;

bb.    Past and future embarrassment;

cc.    Past and future humiliation;

dd.    Past and future loss of life's pleasures;

ee.    Loss of earnings; and

ff.    Economic and financial damages.

77.    The injuries of Kendra Arista, as described herein, were caused by reason of all defendants' negligence and were not caused or contributed thereto by any action or inaction of Plaintiffs.[2]

## COUNT I – NEGLIGENCE
## PLAINTIFFS v. UNITED STATES OF AMERICA

78.    The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

79.    The negligent acts and omissions of The United States of America, by and through it employees, servants, actual agents, apparent agents, and ostensible agents, including specifically Dr. Ngare, Dr. Nevin, and Dr. Peduzzi, and derivatively HCHC, in their medical management, care, and treatment of Kendra Arista, as set forth in the predicate facts stated above, consisted of one or more of the following:

    a.    Failure to appropriately evaluate Kendra Arista's secondary amenorrhea;

    b.    Failure to appropriately evaluate Kendra Arista's elevated prolactin levels;

    c.    Failure to appropriately evaluate Kendra Arista for galactorrhea;

    d.    Failure to determine whether Kendra Arista had galactorrhea;

    e.    Failure to appropriately evaluate Kendra Arista's elevated ESR;

    f.    Failure to perform an adequate history and physical exam on Kendra Arista;

    g.    Failure to perform a more detailed physical examination on Kendra Arista given her clinical history, specifically failing to perform breast and visual field exams;

    h.    Failure to perform a breast exam and determine that Kendra Arista had galactorrhea;

---

[2] Plaintiffs include the defendants against whom these claims were stayed from Arista, et al. v. Sucato, et al., No. 16-1401.

13

i.     Failure to recognize and/or consider that the cause of Kendra Arista's secondary amenorrhea with elevated prolactin levels was a pituitary adenoma/tumor until this diagnosis was ruled out/excluded;

j.     Failure to recognize and/or consider that the cause of Kendra Arista's secondary amenorrhea with elevated prolactin levels and galactorrhea was a pituitary adenoma/tumor until this diagnosis was ruled out/excluded;

k.     Failure to recognize and/or consider that the cause of Kendra Arista's secondary amenorrhea with elevated prolactin levels and elevated ESR was a pituitary adenoma/tumor until this diagnosis was ruled out/excluded;

l.     Failure to order radiologic imaging of Kendra Arista's pituitary;

m.     Failure to rule out a pituitary adenoma/tumor on Kendra Arista;

n.     Failure to include pituitary adenoma/tumor in Kendra Arista's differential diagnosis;

o.     Failure to rule out pituitary adenoma/tumor as the cause of Kendra Arista's secondary amenorrhea and elevated prolactin levels;

p.     Failure to refer Kendra Arista back to the CHP Adolescent Medicine Clinic, Dr. Sucato or to an endocrinologist, gynecologist or other subspecialist to evaluate and treat Kendra's hyperprolactinemia and secondary amenorrhea;

q.     Failure to order a repeat prolactin level in September 2013;

r.     Failure to adequately review Kendra Arista's medical record when seeing her for a physical exam in 2013;

s.     Failing to recognize that Kendra Arista had elevated prolactin levels;
t.     Failure to advise Kendra Arista and her mother that elevated prolactin levels can be caused by a pituitary/brain tumor;

u.     Failure to advise Kendra Arista and her mother that a pituitary/brain tumor needed to be ruled out;

v.     Failure to advise Kendra Arista and her mother of the need for additional follow up because Kendra could have a pituitary/brain tumor;

w.   Failure to advise Kendra Arista and her mother that Kendra's workup was incomplete and a pituitary/brain tumor had not been ruled out;

x.   Failure to advise Kendra Arista and her mother that even if Kendra's elevated prolactin levels could be caused by psychosomatic illness, a pituitary/brain tumor needed to be ruled out.

80.   The negligence of Defendant, United States of America, as set forth herein, was a substantial contributing factor causing the injuries and damages suffered by Kendra Arista.

81.   As a direct and proximate result of the negligence and carelessness of Defendant, United States of America, Kendra Arista suffered catastrophic injuries and damages as set forth above.

**WHEREFORE**, Plaintiffs, Kendra Arista and Rachel Boris, demand judgment against all defendants, individually, jointly, severally, or in the alternative, in an amount in excess of One-Hundred Fifty Thousand Dollars ($150,000.00) and prevailing arbitration limits, exclusive of pre-judgment interest and post-judgment interest and costs.

Respectfully submitted,

**KLINE & SPECTER**
A PROFESSIONAL CORPORATION

Dated: 2/16/17

Thomas R. Kline, Esquire
Dominic C. Guerrini, Esquire
Mark S. Polin, Esquire
1525 Locust Street
The Nineteenth Floor
Philadelphia, PA 19102
(215) 772-1000
*Attorneys for Plaintiffs*